IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| OLUKAYODE KASHAKA, et al. | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL NO. L-04-2615 |
| | : | |
| BALTIMORE COUNTY, MARYLAND., et al. | : | |
|     Defendants, | : | |

**MEMORANDUM**

Pending is Defendants' motion for summary judgment.  The issues have been fully briefed by the parties, and no oral argument is necessary.  <u>See</u> Local Rule 105.6 (D. Md. 2004).  For the reasons stated herein, the Court will, by separate Order, GRANT Defendants' motion.

**I.     Introduction**

Plaintiffs, Kashaka Olukayode [1] and his family (spouse Sauda and son Ayinde), allege that Baltimore County police officers harassed them by illegally searching their home and vehicle and by issuing them more than sixty parking and traffic citations.  They claim that although they complained to the Chief of Police, no action was taken to stop the alleged harassment.  Plaintiffs also contend that the Baltimore County Department of Health charged them with health code violations.  They allege that some of the charges and citations resulted from complaints lodged against them by their neighbor, Michael K. Bennett.

Although Plaintiffs originally sued six defendants, only three remain: (i) Baltimore County, Maryland, (ii) Baltimore County Police Officer B.R. Kurtz, and (iii) Michael K.

---

[1] The Complaint and the docket mistakenly refer to Plaintiff as "Olukayode Kashaka."

Bennett.[2]  Plaintiffs assert eight counts.  In the first four counts, they seek redress under 42 U.S.C. § 1983 for alleged violations of their Fourth Amendment, due process, equal protection, and First Amendment rights under the United States Constitution, respectively.   The fifth count alleges that the defendants conspired to violate their constitutional rights, in violation of 42 U.S.C. §§ 1983, 1985(3).  The last three counts allege pendent state law claims:  a violation of Articles 24 and 26 of the Maryland Declaration of Rights, intentional infliction of emotional distress, and loss of consortium.

Defendants Baltimore County and Officer B.R. Kurtz (hereinafter "Defendants") moved for summary judgment.[3]  In a weak effort to defeat summary judgment, Plaintiffs submitted an opposition brief that is full of vague, conclusory allegations about harassment, intimidation, and

---

[2]  The Court previously dismissed Plaintiffs' claims against the other three defendants, the Baltimore County Health Department, the Director of the Baltimore County Office of Finance and Budget, and the Baltimore County Police Department.  (See Docket Nos. 13, 14, 19.)

[3]  Defendant Michael K. Bennett never filed an answer to the Complaint, and, to this date, has not participated in the lawsuit.  On May 20, 2005, the Clerk entered default against him.  Plaintiffs, however, never moved for default judgment.  A year later, on May 9, 2006, the Court directed Plaintiffs to file a motion for default judgment within ten days.  Although more than four months have passed, Plaintiffs still have not filed the requested motion, apparently having abandoned their claims against Bennett.

Plaintiffs' claims against Bennett are not viable, at any rate.  Bennett is not a state actor, so Plaintiffs' § 1983 and Maryland Declaration of Rights claims cannot stand against him.  As discussed herein, there is no evidence that Bennett and Baltimore County employees were conspiring against Plaintiffs, so the § 1985 claim fails.  It appears that Bennett simply complained to Baltimore County officials about Plaintiffs, which he is certainly entitled to do and which does not rise to the level of extreme and outrageous conduct necessary to prove an intentional infliction of emotional distress claim.  In the absence of any wrongdoing on Bennett's part, he cannot be held liable under a loss of consortium claim.  Plaintiffs' claims against Bennett, therefore, have no merit, and there would be no practical reason for Bennett to respond and participate in the case.

Accordingly, the Court will, by separate Order, SET ASIDE the entry of default and DISMISS the claims against Bennett.

threats by Baltimore County police officers. A review of the summary judgment record, however, reveals that the evidence supporting Plaintiffs' case is thin, to say the least, and fails to show any constitutional or state-law violations.

## II.     Background

### A.     Alleged Police Harassment

According to the admissible evidence,[4] Plaintiffs had the following encounters with police officers, many of whom are unidentified[5]:

- (i) <u>February 23, 1998</u>: Plaintiffs claim that Defendant Officer B.R. Kurtz of the Baltimore County Police Department searched the Plaintiffs' home while only their minor children, Atu and Ayinde, were present. (Sauda Olukayode Aff. ("S. Olukayode Aff.") ¶ 7.) Officer Kurtz explains that he was responding to a call to Plaintiffs' home when several juveniles verbally abused him. Ayinde Olukayode stated that he resided in the home and, when Officer Kurtz asked Ayinde for his identification, Ayinde walked into the home. Officer Kurtz states that, to ensure his safety, he followed Ayinde inside. Although Ayinde told him to leave, an adult female gave him permission to stay. Once Ayinde produced identification, Officer Kurtz exited the home and drove away. He did not search any drawers, beds, or closets in the home, and he did not seize any items. (Affidavit of Bruce

---

[4] There are various problems with the exhibits offered by Plaintiffs in opposition to Defendants' summary judgment motion. First, Plaintiffs cite to three exhibits (Exhibits 1A, 1F, and 16B) which they failed to attach to their opposition. Second, Plaintiffs attach parking and traffic citations, none of which are authenticated. Some of the citations do not state the offender's name. The offender identified on the remaining tickets is the Olukayodes' daughter, Akua, who is not a plaintiff in the case. Finally, Plaintiffs include (i) letters that they wrote to public officials detailing the alleged harassment and (ii) the officials' letters in response. These letters are unauthenticated, unsworn hearsay and, as such, cannot be considered by the Court on summary judgment.

[5] In addition to these encounters, on May 7, 2004, unidentified police officers "cited" Nicole Lunn, the girlfriend of Plaintiff Ayinde Olukayode. (K. Olukayode Aff. ¶ 14.) The nature of the citation is unclear. Ms. Lunn is not a plaintiff in this case, and there is no evidence that Ayinde was with her when she received the citation or that the police had any knowledge that the two were dating. Accordingly, Plaintiffs cannot use Ms. Lunn's citation to bolster their claims.

R. Kurtz ("Kurtz Aff.") at 1-2.)

(ii) <u>March 16, 1998</u>: Officer Kurtz arrested Plaintiff Ayinde Olukayode for shoplifting. (Kurtz Aff. at 2.)

(iii) <u>July 17, 1999</u>: Officer Kurtz investigated Plaintiff Ayinde Olukayode for shoplifting at White Marsh Mall. (Kurtz Aff. at 2.)

(iv) <u>November 2, 2002</u>: Unidentified officers stopped Plaintiff Kashaka Olukayode's car and asked his wife and him to exit the vehicle. Kashaka Olukayode claims that the officers asked him if he had any weapons in the car and then an officer with the last name of "Boller" searched the car.[6] Although the officer did not find anything illegal in the car, he confiscated Kashaka Olukayode's license and registration, without an explanation as to why. (Deposition of Kashaka Olukayode ("K. Olukayode Dep.") at 24-26.)

(v) <u>April 3, 2004</u>: Unidentified police officers cited Plaintiff Kashaka Olukayode for having an "improper tag" on his vehicle. (K. Olukayode Aff. ¶ 13.)

(vi) <u>April 12, 2004</u>: Unidentified police officers stopped Plaintiff Kashaka Olukayode for having an "improper tag" on his vehicle, gave him a warning, and searched his car. (K. Olukayode Aff. ¶ 16.)

(vii) <u>July 12, 2004</u>: Unidentified police officers "cited" Plaintiff Ayinde Olukayode "for no reason." (K. Olukayode Aff. ¶ 15.)

(viii) <u>Unknown Date</u>: An unidentified police officer stopped Plaintiff Kashaka Olukayode, told him to exit the car, and inspected the front of the car with a flashlight. Other unidentified police officers then arrived, shined their flashlight on Mr. Olukayode and asked if he had "anything on [him]." The officers, without explanation, gave Mr. Olukayode a "warning citation." (K. Olukayode Dep. at 26-29.)

---

[6] Defendants have offered the affidavit of a Baltimore County Police Officer by the name of Jeffrey G. Boller. Officer Boller claims that on November 2, 2002, he was assigned to "foot patrol," the duties of which do not include making traffic stops. He states that he, therefore, did not stop and search the Olukayodes' vehicle that day. (Boller Affidavit at 1.) Defendants, however, have not offered any evidence that there are no other officers with the last name of "Boller" who may have been on duty on November 2, 2002. Moreover, it is quite possible that Mr. Olukayode is mistaken about the officer's name. Accordingly, the Court will assume, for purposes of this motion, that an unidentified police officer stopped and searched the Olukayodes' car. Whether the officer's name was "Boller" or not is irrelevant because the Complaint does not name "Officer Boller" as a defendant.

4

  (ix) <u>Unknown Dates</u>: When Plaintiff Ayinde Olukayode was a minor, police officers "stopped" him approximately ten to fifteen times. (K. Olukayode Aff. ¶ 7; S. Olukayode Aff. ¶ 9.) The nature of the alleged "stops" is unclear. Moreover, Plaintiffs have not stated Ayinde's age. The Court, therefore, does not know when Ayinde was a minor and, therefore, when these "stops" took place.

 **B.** **Additional Allegations**

Plaintiffs make two additional allegations. First, they state that their neighbor, Michael Bennett, falsely reported that Plaintiffs had violated Baltimore County's health code and that, rather than investigating Bennett's allegations, the Baltimore County Department of Health simply issued tickets to Ayinde Olukayode.[7] (K. Olukayode Aff. ¶ 8; S. Olukayode Aff. ¶ 10.) Second, Plaintiffs complain that the Director of Finance filed charges against Ayinde in state court for unpaid parking tickets and then intentionally let the case linger to the point that the court dismissed the charges for failure to prosecute. (K. Olukayode Aff. ¶ 9; S. Olukayode Aff. ¶ 11.)

**III.** **Standard of Review**

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>see</u> also <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses

---

[7] Although Plaintiffs' brief offers no details about the alleged health code violations, it appears from the papers attached to their brief that Bennett complained about Plaintiffs' care (or lack thereof) of their dog. Specifically, he alleged that the dog did not have a license, barked too much, and often ran loose, and that Plaintiffs failed to pick up after it.

5

from proceeding to trial).  Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.  Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

**IV.   Analysis**

Defendants have moved for summary judgment, arguing that a number of the incidents of which Plaintiffs complain are barred by the statute of limitations and that the remaining incidents do not give rise to a constitutional or state-law violation.  The Court agrees.

    **A.   Defendant Officer B.R. Kurtz**

Maryland's general three-year statute of limitations[8] applies to Plaintiffs' § 1983,[9] § 1985,[10] Maryland Declaration of Rights,[11] intentional infliction of emotional distress,[12] and loss of consortium claims.[13]  Plaintiffs filed their Complaint on August 10, 2004.

---

[8] See Md. Code Ann., Cts. & Jud. Proc. § 5-101.

[9] Causey v. Balog, 162 F.3d 795, 804 (4th Cir. 1998) ("The applicable statute of limitations for a § 1983 action is taken from limitations applied to state tort causes of action, which is three years in Maryland.").

[10] Grattan v. Burnett, 710 F.2d 160, 162 (4th Cir. 1983) (stating that §§ 1981, 1983, and 1985 do not specify a limitations period and the court, therefore, borrows the limitations period from Maryland law), aff'd, 104 S. Ct. 2924 (1984).

[11] Hovatter v. Widdowson, 2004 WL 2075467, at *8 (D. Md. Sept. 15, 2004) (stating that claims under Articles 24 and 26 of the Declaration of Rights are subject to Maryland's general three-year statute of limitations).

[12] Knickman v. Prince George's County, 187 F. Supp. 2d 559, 563-64 (D. Md. 2002) (stating that Maryland's three-year statute of limitations applies to claims of intentional infliction of emotional distress).

[13] Stone-Pigott v. G.D. Searle & Co., 660 F. Supp. 366, 368 (D. Md. 1987) (stating that Maryland's three-year statute of limitations applies to loss of consortium claims), aff'd, Phillips

Accordingly, for a claim to be timely, the conduct giving rise to it must have occurred after August 10, 2001.

The evidence shows that Officer B.R. Kurtz had only three encounters with Plaintiffs, two of which occurred in 1998 and one in 1999. Accordingly, Plaintiffs' claims against Officer Kurtz are untimely. Plaintiffs attempt to save their untimely claims by asserting that police officers harassed them continuously from 1998 through 2004. For the continuous violation doctrine to apply, however, Plaintiffs must show that Officer Kurtz engaged in at least one act of misconduct during the limitations period (2001-2004). See Causey v. Balog, 162 F.3d 795, 804 (4th Cir. 1998) ("[A]n allegation of continuous harassment will not save a claim that is otherwise barred by the statute of limitations, absent some showing that an actual violation occurred within the limitations period."). Plaintiffs have failed to do so,[14] and their claims against Officer Kurtz, therefore, are barred.

### B. Baltimore County

#### 1. Section 1983 Claims - Alleged Violations of Federal Constitution

Counties and other local government bodies cannot be held liable under § 1983 under a theory of respondeat superior. Counties may, however, be held liable for the acts of individual defendants if those defendants were executing an official policy or custom of the County that resulted in a violation of a plaintiff's rights. Monell v. Department of Soc. Servs., 436 U.S. 658,

---

v. G.D. Searle & Co., 884 F.2d 796 (4th Cir. 1989).

[14] Although Plaintiffs state that officers searched their vehicle and issued them several citations in 2002 and 2004, which is within the limitations period, those officers are unidentified. There is, therefore, no evidence that Officer Kurtz issued any citations or had any conduct whatsoever with Plaintiffs during the limitations period.

7

690-91 (1978).

A plaintiff may establish a government "custom" by showing that "a particular practice 'is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law.'" Simms ex rel. Simms v. Hardesty, 303 F. Supp. 2d 656, 670 (D. Md. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)), aff'd, Simms v. Bruce, 104 Fed. Appx. 853 (4th Cir. 2004).  A local governmental policy can be established through a local ordinance or regulation or through the act or omission of an individual with "final authority to establish municipal policy with respect to the action ordered." Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004).  A local government may also be held liable it if "was aware of the constitutional violation and either participated in, or otherwise condoned, it." Id. at 782-83.

Even if Plaintiffs could prove that Baltimore County police officers and other County employees violated their constitutional rights, Plaintiffs have failed to show that the officers and employees were executing an official policy or custom of the County.  In a feeble attempt to hold the County liable, Plaintiffs state that they complained to the Baltimore County Chief of Police about the alleged harassment and that he failed to take any action to stop it.  Plaintiffs, however, have offered no evidence regarding (i) when, or how many times, they complained to the Chief of Police, (ii) the nature of their complaints, or (iii) what response, if any, they received from the Chief.  Plaintiffs have not offered into evidence any letters that they wrote to the Chief of Police.[15]  All they offer is the bare allegation that they complained, but nothing was done.  This

---

[15] Plaintiffs claim that Baltimore County's alleged indifference to the violation of Plaintiffs' constitutional rights is evident from the "number of political characters that were involved in bring [sic] attention of the County to violations of Plaintiffs' rights." (Pls' Opp'n at 3.) Plaintiffs state that they sent letters to (i) Governor Robert Ehrlich (who was a Congressman at the time), (ii) Congressman Elijah Cummings, and (iii) Kweisi Mfume (who was the CEO of

is insufficient to prove municipal liability.

### 2. Section 1985 Claim - Alleged Civil Conspiracy

To succeed on a claim for conspiracy under § 1985, a plaintiff must prove:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995) (citations omitted). Further, "a claimant must show an agreement or a 'meeting of the minds' by defendants to violate [his] constitutional rights." Id. at 1377.

Plaintiffs contend that Baltimore County conspired with their neighbor, Michael Bennett, to violate their constitutional rights. Their entire proof on this point consists of the assertions that (i) although they complained about Bennett to County officials, the County took no action, and (ii) the Department of Health failed to investigate a complaint made by Bennett, choosing to issue Plaintiffs a citation instead.

Plaintiffs' proof of a conspiracy is utterly lacking. They fail to offer any evidence that they ever did, in fact, complain about Bennett to Baltimore County. They have provided no proof of any plan or scheme between Bennett and Baltimore County to persecute them. Accordingly, their § 1985 claim fails.

---

the NAACP at the time). As previously noted, these letters are unauthenticated. Moreover, none of these individuals were affiliated with Baltimore County. Although Plaintiffs claim that then-Congressman Ehrlich forwarded their letter of complaint to the Baltimore County Chief of Police, there is no evidence of this in the record.

### 3. Articles 24 and 26 of the Maryland Declaration of Rights

Articles 24[16] and 26[17] of the Maryland Declaration of Rights are the state counterparts to the Due Process Clause and the Fourth Amendment of the United States Constitution, respectively.[18] Local government entities have <u>respondeat superior</u> liability for violations of the Maryland Declaration of Rights that were committed by the entity's agents and employees acting within the scope of their employment. <u>DiPino v. Davis</u>, 729 A.2d 354, 372 (Md. 1999).

#### a. Article 24 - Due Process

Plaintiffs allege a substantive due process claim,[19] contending broadly that the following acts deprived them of their liberty and property without due process of law: (i) Department of Health officials arbitrarily filed charges against Plaintiff Ayinde Olukayode for violations of the

---

[16] Article 24 of the Maryland Declaration of Rights states:

That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

[17] Article 26 states:

That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

[18] See <u>Franklin v. Montgomery County, Maryland</u>, 2006 WL 2632298, at *17 (D. Md. Sept. 13, 2006) ("Article 24 protects substantive due process rights and Article 26 protects the right to be free from unreasonable searches and seizures; the statutes are construed <u>in pari materia</u> with the Fourteenth and Fourth Amendments of the United States Constitution, respectively.").

[19] Nowhere do Plaintiffs contend that they are raising a procedural due process claim. Even if they were raising such a claim, they fail to specify (beyond generally mentioning the word "investigation" in their discussions of the alleged health code violations) the procedures to which they were supposedly entitled, but denied.

10

health code, without first conducting an investigation, (ii) County officials arbitrarily charged Plaintiff Ayinde Olukayode with parking violations and then intentionally let the case linger until the court dismissed it for failure to prosecute, and (iii) County police officers arbitrarily cited Plaintiffs for traffic violations.  Plaintiffs do not explain how these acts have deprived them of their liberty.  Regarding the alleged deprivation of property, they claim that they have suffered financially because they have had to reduce the amount of time that they devote to their family business so that they can be at home to protect their children from the alleged harassment by Baltimore County officials.[20]

To prove a substantive due process claim, Plaintiffs must show: "(1) that they had property or a property interest; (2) that the [County] deprived them of this property or property interest; and (3) that the [County's] action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency."  Sylvia Dev. Corp. v. Calvert County, Maryland, 48 F.3d 810, 827 (4th Cir. 1995).  "The protection of substantive due process is indeed narrow and covers only state action which is 'so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'"  Id. (quoting Rucker v. Harford County, 946 F.2d 278, 281 (4th Cir. 1991)).

Even if Plaintiffs satisfy the first two elements, they cannot satisfy the third.  The County's acts in charging Plaintiffs with health code violations and with writing and prosecuting parking citations do not fall "beyond the outer limits of legitimate governmental action,"

---

[20] The Court notes that only one of the alleged incidents (when Officer Kurtz entered the Plaintiffs' home in 1998) involved the family's home.

particularly when Plaintiffs have offered no explanation as to why those charges and citations were unwarranted in the first place.

### b.     Article 26 - Search and Seizure

Plaintiff Kashaka Olukayode claims that Baltimore County police officers searched his vehicle on two occasions and seized his license and registration.  Plaintiffs simply assert that the officers worked for Baltimore County; they have not identified the officers by name, nor have they offered any proof that they were, in fact, County employees as opposed to officers from another jurisdiction.[21]  Moreover, they have not attempted to show that the officers were acting within the scope of their employment during the alleged searches.  For these reasons, the Court concludes that Baltimore County cannot be held vicariously liable for the officers' alleged actions.

### 4.     Intentional Infliction of Emotional Distress

To prove a claim for intentional infliction of emotional distress under Maryland law, Plaintiffs must show that (i) the conduct was intentional or reckless, (ii) the conduct was extreme and outrageous, (iii) the conduct caused emotional distress, and (iv) the emotional distress was severe.  Harris v. Jones, 380 A.2d 611, 614 (Md. 1977).  For conduct to be "extreme and outrageous," it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. (quoting Restatement (Second) of Torts § 46, cmt. (d) (1965)).  The alleged acts in this case simply do not rise to that level.

---

[21] Although Plaintiffs identified Officer Kurtz of the Baltimore County Police Department as the officer who entered their home in February 1998, as discussed above, the claims involving Officer Kurtz are barred by the statute of limitations.

Moreover, "[u]nder Maryland law, an intentional infliction of emotional distress plaintiff must show the 'truly devastating effect' of the conduct they were subjected to by proving an emotional response 'so acute that no reasonable person could be expected to endure it.'" Rich v. United States, 158 F. Supp. 2d 619, 630 (D. Md. 2001) (quoting Pemberton v. Bethlehem Steel Corp., 502 A.2d 1101, 1115 (Md. 1986)). Plaintiffs claim only that they have suffered humiliation, loss of income, damage to their reputation, and familial tensions and frictions. (K. Olukayode Aff. ¶ 10.) They do not offer any proof as to the nature, intensity, or duration of their trauma. See Manikhi v. Mass Transit Admin., 758 A.2d 95, 115 (Md. 2000).

For these reasons, Plaintiffs' intentional infliction of emotional distress claim fails.

### 5. Loss of Consortium

The elements of a loss of consortium claim are: (i) injury to the marital relationship, (ii) caused by the wrongful conduct of the defendant. Deems v. Western Md. Ry. Co., 231 A.2d 514 (Md. 1967). Plaintiffs have failed to prove any wrongful conduct for which Baltimore County may be held liable. Accordingly, their loss of consortium claim fails.

### V. Conclusion

For these reasons, the Court will, by separate Order,

(i) GRANT Defendants' motion,

(ii) ENTER JUDGMENT in favor of Defendants Officer B.R. Kurtz and Baltimore County,

(iii) SET ASIDE the default previously entered against Defendant Michael K. Bennett,

(iv) DISMISS the claims against Bennett, and

(v) DIRECT the Clerk to CLOSE the case.

Dated this 27th day of September, 2006.

                                                                        _____/s/_____
                                                                         Benson Everett Legg
                                                                         Chief Judge